UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-364-GWU

VERLIN CRESS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Cress

    4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Cress

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Cress

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Cress

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Ibid</u>.  In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Verlin Cress, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of being status post myocardial infarction with stent placement and status post amputation of right hand digits. (Tr. 14). Nevertheless, the ALJ determined that Mr. Cress retained the residual functional capacity to perform a full range of "light" level exertion, and could return to his past relevant work as a night security guard, thus terminating the sequential evaluation at Step Six of the Garner analysis. (Tr. 14, 16). The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Cress alleged disability beginning April 5, 2004, the day he had a "massive heart attack." (Tr. 41, 237). He alleged that he was short of breath, could not lift over five pounds, and could not stand for long periods of time. (Tr. 72). At

Cress

the administrative hearing, he testified that he still had chest pain, and had difficulty walking or standing because of swelling in his feet and legs. (Tr. 237, 239). A doctor had put him on a five-pound lifting restriction, although he was not sure which doctor. (Tr. 239-40). Questioned about his past work, the plaintiff testified that he had been a nighttime security guard, and his job also involved the supervisory function of driving around to check on other guards. (Tr. 241).[1]

The plaintiff's medical records show that he underwent a left coronary catheterization with the placement of three stents in April, 2004. (Tr. 93-5). An incidental finding was made of a traumatic amputation of the right thumb and index finger. (Tr. 93). On May 1, 2004, Mr. Cress presented to an emergency room complaining of chest pain, and was not taking any of his medications while continuing to smoke against medical advice. (Tr. 117-18). A follow-up cardiac catheterization and echocardiogram did not show any restenosis or more than "mild" regurgitation. (Tr. 112-13, 129-30). He was again advised to take all his medications as prescribed and quit smoking. (Tr. 175). No specific functional restrictions were provided.

Dr. Mark Burns conducted a consultative examination on September 12, 2004, but found no physical or orthopedic abnormalities. (Tr. 180-3).

---

[1] In contrast, he denied supervising others in his Work History Report. (Tr. 53).

Cress

A state agency physician, Dr. S. Mukherjee, reviewed the evidence on September 27, 2004, and concluded that Mr. Cress would be capable of "light" level exertion, should never climb ladders, ropes, or scaffolds or crawl "under covered surface," and needed to avoid concentrated exposure to extreme cold, heat, and humidity.  (Tr. 184-91).   Dr. John Rawlings, another state agency physician, reviewed the evidence on December 16, 2004, and opined that the plaintiff could perform "light" level exertion, with the only non-exertional restrictions being the need to avoid concentrated exposure to heat and cold.  (Tr. 194-200).

Subsequently, the plaintiff was hospitalized again in December, 2004, but the diagnosis was "atypical chest pain," and a myocardial infarction was ruled out.  (Tr. 202).  Apparently, he reported to the physician on admission that he was short of breath with moderate to severe exertion, but "usually walks one mile per day."  (Tr. 203).  An echocardiogram showed normal function, a chest x-ray was normal, and the plaintiff was asymptomatic in the hospital. On this occasion, an incidental finding of an amputation of the right big toe and right index finger from "many years ago" was made.  (Id.) Mr. Cress was discharged with instructions to conduct "activity as tolerated."  (Id.).

Another hospitalization followed in April, 2005, for acute appendicitis and acute pancreatitis.  (Tr. 206).  A cardiologist, Dr. R. Podapati, examined the plaintiff the day after his appendectomy and noted that he continued to smoke.  (Tr. 222-3).

Cress

On examination, Dr. Podapati found decreased breath sounds, but noted the patient was in no acute distress, and, after a review of an electrocardiogram and an echocardiogram, diagnosed stable angina and suggested further testing. (Tr. 223-4). An incidental finding was made of a history of a traumatic amputation of the first and second digits of the right hand. No functional restrictions are suggested.

Office notes from the Little Flower Free Clinic were submitted, but no functional restrictions are apparent. (Tr. 208-18).

The ALJ's finding that the plaintiff could perform "light" level exertion is clearly supported by substantial evidence. The only sources to give functional restrictions were the state agency reviewers, both of whom determined that light level exertion was appropriate, although they differed regarding the non-exertional restrictions.[2]

The plaintiff's only argument is that the ALJ failed to consider the implications of his ability to handle objects due to the amputation of his right thumb and index finger, although he did not allege this as a ground for disability and did not even

---

[2]Although the ALJ gave no reason for not accepting the non-exertional restrictions given by the reviewers, which is a procedural defect in light of the Commissioner's regulations at 20 C.F.R. Section 416.927(f)(2)(I), the error is harmless in the present case. Even if the plaintiff's job as he performed it would have involved exposure to heat and cold, a point not clearly established, Section 372.667-034 of the Dictionary of Occupational Titles (DOT) indicates that the light level job of security guard, although involving exposure to weather, does not involve exposure to extreme cold or heat, and does not require climbing or crawling. Therefore, it appears that the plaintiff could perform the job of security guard as it is performed in the national economy. Moreover, the plaintiff does not raise this point on appeal.

Cress

discuss the issue at the administrative hearing. However, it was the plaintiff's burden to prove at the outset that he could not perform his past relevant work. The only evidence regarding the digit amputations was that they had occurred many years before the alleged onset date, and, inferentially, the plaintiff was able to perform his job successfully despite this problem. Therefore, the condition had no real effect on the disability determination given his past work history. <u>See</u> <u>Auer v. Secretary of Health and Human Services</u>, 830 F.2d 594, 596 (6th Cir. 1987).

The decision will be affirmed.

This the 14th day of May, 2007.

Signed By:
<u>G. Wix Unthank</u>
United States Senior Judge